MARY ROCCO, as Executrix, etc., of JOSEPH ROCCO, Deceased, Plaintiff, *v.* LEHIGH VALLEY RAILROAD COMPANY, Defendant.

Supreme Court, Tompkins County, January 25, 1930.

*Stagg & Heath,* for the plaintiff.

*Cobb & Cobb,* for the defendant.

SENN, J. The action was brought under the Federal Employers' Liability Act to recover for the death of plaintiff's testator who was killed by one of defendant's trains while employed as a track inspector on defendant's road. His duty was to daily go out on the tracks and ascertain that they were in good condition for trains to pass over them. For this purpose he was furnished with a foot-propelled vehicle called a speeder. At about four o'clock in the afternoon of December 8, 1927, he was struck by a train coming from the north and killed. The train was about three and one-half hours late, having been delayed by landslides and washouts.

The negligence claimed by the plaintiff, among other things, was that the train was operated carelessly, without due regard for the safety of employees of the railroad on the tracks, in not giving reasonable warning of its approach, considering among other things that it was not running on schedule time.

The defendant insists that no negligence was proven and that the accident was wholly due to the negligence of deceased; that it was his duty, under an order of the company, never to go out on the track on his inspections without first obtaining from the operator at Ithaca a " line up " of the trains on the track patrolled by him, that is, of their location and movements; that he went out on the day in question without having obtained this information which he could have obtained from the operator. It is claimed (citing *Unadilla Valley Railway Co.* v. *Caldine,* 277 U. S. 578) that decedent's violation of his orders was the proximate and sole cause of his death. The *Caldine* case is familiar in this vicinity. Caldine was conductor of a train on a single track which passed through Bridgewater. He had printed orders not to leave Bridgewater until train No. 15 had reached that station and taken a siding to allow his train to pass. Disregarding this, on the day in question, train No. 15 not having arrived, he directed his train to go on. His train, ran into train 15 rightly coming the other way and he was killed. The conductor on train 15 generally, or when a little late at a station about two miles from Bridgewater, would telephone to the Bridgewater station that he was coming. He did so this day. The station agent testified that he told this to the motorman of decedent's train although the motorman denied it. The conductor did not receive the notice and signaled the motorman to go ahead. The result was as stated.

It seems to me that the *Caldine* case differs radically from the one at bar, both in its details and in the principle involved. In

the *Caldine* case the order was printed and permanent unless countermanded in writing. Here the order was oral, although the company had a long list of printed rules and instructions. In the *Caldine* case the only negligence alleged against the defendant was the failure of the station agent to inform the conductor, and the act of the motorman in obeying the conductor's order to start. Here the negligence was that of the operators of the train in failing to run with due care under the circumstances. Caldine was in command and his motorman was his subordinate and it was held that the failure of the station agent to stop Caldine from doing what he knew he ought not to do, could not be called a cause of his act. The rule under which Caldine operated was not solely for his own personal safety, but was for the protection of the property of the company and the lives of others. The rule as to Rocco was mainly to safeguard his own safety and the possible liability of the company in case of an accident to him. Besides, I think there was a question of fact as to whether or not the rule was flexible. It seems that Rocco was kept in the employ of the company and on the same job, after having been at least twice admonished and reported for going out in violation of the rule. Had he known the location of this train on the day of the accident, it may be questioned whether it would not still have been his duty to go out and inspect this track on a day when there had been so many washouts and caveins. There are times conceivable when it is the duty of a subordinate, in unforeseen circumstances, to act beyond his orders in the interest of his superiors and he might even be censured for not doing so, if an accident had happened due to his failure to go out and inspect the track. I will assume, however, as the jury evidently did, that Rocco was negligent. His negligence was not the sole cause of his death.

It may be that rule 14-d (Q) should not have been admitted in evidence over the defendant's objection. I do not believe that it affected the verdict of the jury. Under it, there should have been blown one short, one long and one short whistle for Stewart Park crossing. Defendant's witnesses testified that two long and two short whistles were blown. The dispute was whether any whistle at all was blown for this crossing. If it was blown as claimed, it would have been as effectual to warn deceased of the approach of the train as though it had been blown in accordance with the rule.

All things considered, I am of the opinion that the motion to set aside the verdict and for a new trial should be denied.

Submit order.